**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT GLOVER,                  :
                                :   Civil Action No. 11-5731 (ES)
         Plaintiff,             :
                                :
    v.                          :   **OPINION**
                                :
CITY OF JERSEY CITY, et al.,    :
                                :
         Defendants.            :

**APPEARANCES:**

Plaintiff pro se
Robert Glover
Hudson County Correctional Center
Kearny, NJ  07032

**SALAS**, District Judge

    Plaintiff Robert Glover, a pre-trial detainee confined at Hudson County Correctional Center at Kearny, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Amended Complaint.

    At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on November 1, 2009, while he was standing outside a friend's home, Plaintiff was arrested by several officers of the Jersey City Police Department. Plaintiff alleges that Officers C. Lugo, G. Wojowicz, Anthony Goodman, Michael Burgess, Sandwith, and Hilburn participated in his arrest. Plaintiff alleges that some of these officers beat, kicked, and punched him, causing various injuries, while others of these officers stood by and did nothing to stop the beating. Plaintiff alleges that Officer Goodman submitted a false report about the circumstances of Plaintiff's arrest.

Plaintiff asserts a claim of excessive force, in violation of his rights under the Fourth, Eighth,[1] and Fourteenth Amendments, against the six officers who participated in his arrest.

---

[1] The Eighth Amendment protects convicted and sentenced prisoners from cruel and unusual punishment and has no application to an arrest such as the one described in the Complaint. Accordingly, the Eighth Amendment claim will be dismissed with prejudice.

Plaintiff also names as Defendants the City of Jersey City, the City of Jersey City Police Department, and John Does 1 through 20. In addition to the excessive force claim, Plaintiff asserts that "Defendants" (not otherwise specified) failed to discipline or sanction defendants Anthony Goodman, Michael Burgess, G. Wojowicz and "the other defendants" despite their "propensity for excessive force in making arrests." (Docket Entry No. 1, Complaint dated Oct. 3, 2011, Third Count). Plaintiff asserts a claim for negligent training and supervision against the City of Jersey City and the Jersey City Police Department. Plaintiff also asserts a claim against all defendants for violations of his First Amendment[2] rights and for violation of 42 U.S.C. §§ 1986[3] and 1988.[4] Plaintiff asserts a

---

[2] The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Nothing in the facts described in the Amended Complaint suggests any basis for a claim under any of the provisions of the First Amendment. The First Amendment claim will be dismissed with prejudice.

[3] Section 1986 provides a cause of action for neglect to prevent a violation of 42 U.S.C. § 1985, a statute providing a cause of action for certain specific and narrowly-drawn conspiracies to violate civil rights, including, for example, deprivation of the right to vote, intimidation of a party, witness or juror, or conspiracy to deprive a person of the right to equal protection. Thus, a viable § 1986 claim is dependent upon a viable § 1985 claim. See, e.g., Koorn v. Lacey Twp., 78 Fed. Appx. 199, 208 (3d Cir. 2003) (citing Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)); Grimes v. Smith, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985).

claim for "conspiracy" against all defendants, alleging that he saw the defendants conspire to violate Plaintiff's rights based upon Defendant Anthony Goodman's submission of a false report about the circumstances of the arrest. Plaintiff asserts a state law claim for negligence and negligent infliction of emotional distress against all defendants.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court must

---

Plaintiff does not here assert a claim for violation of § 1985, nor do the facts alleged suggest any basis for a claim under § 1985. Accordingly, the claim under § 1986 will be dismissed with prejudice for failure to state a claim.

[4] The reference to § 1988 is actually a request for attorneys' fees as a prevailing party. Accordingly, Plaintiff's entitlement to attorneys' fees must await resolution of the case.

"accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Fed.R.Civ.P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106

>    S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
>    dismiss, courts "are not bound to accept as true a
>    legal conclusion couched as a factual allegation").
>    Factual allegations must be enough to raise a right to
>    relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("We decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context.").

>    Context matters in notice pleading. Fair notice under
>    Rule 8(a)(2) depends on the type of case - some
>    complaints will require at least some factual
>    allegations to make out a "showing that the pleader is
>    entitled to relief, in order to give the defendant fair
>    notice of what the ... claim is and the grounds upon
>    which it rests." Indeed, taking Twombly and the
>    Court's contemporaneous opinion in Erickson v. Pardus,
>    127 S.Ct. 2197 (2007), together, we understand the
>    Court to instruct that a situation may arise where, at
>    some point, the factual detail in a complaint is so
>    undeveloped that it does not provide a defendant the
>    type of notice of claim which is contemplated by
>    Rule 8. Put another way, in light of Twombly, Rule
>    8(a)(2) requires a "showing" rather than a blanket
>    assertion of an entitlement to relief. We caution that
>    without some factual allegation in the complaint, a
>    claimant cannot satisfy the requirement that he or she
>    provide not only "fair notice," but also the "grounds"
>    on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions - which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted - and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679.

> Therefore, after <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in <u>Iqbal</u>, [w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief. This plausibility determination will be a context-specific task that requires the

>reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations and internal quotations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg Cnty. Police Dep't, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

>Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon,

915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir. 1995), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict. A custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law.
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale, 318 F.3d at 584 (footnote, internal quotations and citations omitted).

Here, Plaintiff's claims against the City of Jersey City and the Jersey City Police Department, insofar as they are based upon

a theory of vicarious liability, will be dismissed.[5] Plaintiff has failed to make any factual allegations that would support a claim that the constitutional violations he allegedly suffered were the result of a custom or policy of these municipal defendants.

IV. **ANALYSIS**

A. <u>Excessive Force in Arrest</u>

Plaintiff alleges that Officers Goodman, Hilburn, Sandwith, Hugo, Wojowicz, and Burgess participated in beating, kicking, and punching him at the time of his arrest, or that they were present and failed to intervene. Plaintiff alleges that he was unarmed and offered no resistance at the time of his arrest.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated."

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." <u>Abraham v. Raso</u>, 183 F.3d 279, 288 (3d Cir. 1999) (citing <u>Brower v. Cnty. of Inyo</u>, 489 U.S. 593, 599 (1989). <u>See also</u> <u>Graham v. Connor</u>, 490

---

[5] The claim for failure to train and/or supervise will be addressed separately.

U.S. 386, 395 (1989) (emphasis omitted) ("[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen ...." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Tennessee v. Garner, 471 U.S. 1, 8 (1985). See also Graham v. Connor, 490 U.S. 386, 396 (1989). Proper application of this objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396; see also Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Ultimately, "the question is whether the officers' actions are

'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397.

In addition, a police officer may be liable under Section 1983 if the officer fails to intervene and take reasonable steps when an individual is subjected to excessive force at the hands of another officer, even if that officer is a superior. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (citing Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) (other citations omitted)). However, the officer must have a "realistic and reasonable opportunity to intervene." Id. at 651 (citing Clark, 783 F.2d at 1007 (instructing the district court upon remand to determine whether the officer was in a position to intervene)); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972) (liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981) (liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer).

Plaintiff's allegations are sufficient to permit the Fourth Amendment excessive-force claim to proceed against the individual named officers and any "John Doe" officers who participated in or were present during the alleged use of excessive force in connection with Plaintiff's arrest.

B.   <u>Failure to Train or Supervise</u>

Plaintiff alleges that Defendants City of Jersey City and the Jersey City Police Department are liable to him for their failure to train and/or supervise the officers who allegedly used excessive force in his arrest.

Where a need for "more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the failure to provide proper training ... may fairly be said to represent policy for which the city is responsible," <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. <u>Id.</u> Here, however, Plaintiff fails to state a claim for a constitutional injury; thus, he fails to state a claim for failure to train.

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program .... Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training .... Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

<u>Id.</u> at 390-91 (citations omitted).

Here, Plaintiff only alleges that a singular group of officers involved in his arrest used excessive force against him on a single occasion, plainly an insufficient allegation upon which to base liability for failure to train. Accordingly, Plaintiff's failure to train and/or supervise claim must be dismissed for failure to state a claim.

C. <u>Failure to Discipline</u>

Plaintiff asserts a claim against unspecified defendants for failing to discipline or sanction the individual officers for their "propensity" for excessive force in making arrests. Plaintiff does not describe any other arrests allegedly accomplished through excessive force. Accordingly, the claim of "propensity" is not supported by adequate factual allegations.

In any event, an individual has no constitutional right to the imposition of discipline or sanctions against a police officer for the alleged violation of the individual's constitutional rights. <u>Cf. Leeke v. Timmerman</u>, 454 U.S. 83, 85-87 (1981) (in general, a private citizen has no "judicially cognizable interest in the prosecution or non-prosecution of another"). The claim for alleged failure to discipline the officers will be dismissed with prejudice.

D. <u>False Report</u>

Plaintiff alleges that Officer Goodman filed a false report about the circumstances of the arrest and that other officers

conspired with him, by virtue of their awareness of the allegedly false report. Plaintiff does not describe the specifics of the allegedly false report.

To the extent that Plaintiff is complaining that Officer Goodman's report resulted in the filing of false criminal charges against him, he must raise those constitutional challenges in the pending state criminal case; a federal court generally will not intercede to consider issues that Plaintiff has an opportunity to raise before the state court. Younger v. Harris, 401 U.S. 37 (1971). Moreover, if Plaintiff is convicted of these charges, he cannot challenge the fact or duration of his confinement by means of an action under § 1983; rather, he must exhaust his state remedies and then, if appropriate, file a federal habeas application. Preiser v. Rodriguez, 411 U.S. 475 (1973). Nor can he seek relief under § 1983 if this Court's adjudication would call into question the validity of his criminal conviction, unless his conviction first has been overturned on appeal or in state or federal collateral proceedings. Heck v. Humphrey, 512 U.S. 477 (1994). Therefore, Plaintiff's challenge to any pending criminal charges arising out of this event must be dismissed without prejudice for failure to state a claim.

In addition, in order to demonstrate a "conspiracy," "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under

color of [state] law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003). Agreement is the sine qua non of a conspiracy.

To state a claim for conspiracy under § 1983, a plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or co-conspirators] to plot, plan, or conspire to carry out the alleged chain of events." Hammond v. Creative Financial Planning Org., 800 F.Supp. 1244, 1249 (E.D. Pa. 1992) (citing Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)).

Here, Plaintiff has failed to allege any facts showing an agreement or plan formulated and executed by any of the Defendants to achieve a conspiracy. Absent such allegations, Plaintiff's bald allegations of conspiracy are insufficient to state a claim. See, e.g., Swanson v. Miller, 55 F.App'x 871, (10th Cir. 2003) (upholding dismissal of conclusory allegations of conspiracy).

E.  State Law Tort Claims

Plaintiff also asserts state law claims against all defendants for negligence and intentional infliction of emotional distress.

Under New Jersey law, "[t]he requisite elements of a negligence cause of action are: (1) the existence of a duty; (2) the breach of that duty; and (3) proximate causation of damages." LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc., 773 A.2d 1209, 1212 (N.J. 2001).

To recover under a claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must show that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional distress was so severe that no reasonable man could be expected to endure it.[6] Buckley v. Trenton Sav. Fund Soc'y, 544 A.2d 857, 863 (N.J. 1988). A defendant's conduct must be "'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.'" 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 547 A.2d 1134, 1145 (N.J. 1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." Id.

Finally, tort claims against public entities and public employees are governed by the New Jersey Tort Claims Act, N.J.

---

[6] Here, Plaintiff alleges "mental anguish" in a conclusory fashion, insufficient to establish the requisite severe emotional distress.

Stat. Ann. § 59:1-1 et seq. (West 1972).  See <u>Velez v. City of Jersey City</u>, 850 A.2d 1238, 1239 (N.J. 2004); <u>Longo v. Santoro</u>, 480 A.2d 934, 938 (N.J. 1984); <u>Badalamente v. Monmouth County Prosecutor's Office</u>, No. 08-2501, 2011 WL 1898833 at *8 (D.N.J. May 17, 2011).  The New Jersey Tort Claims Act requires that a notice of claim must be filed with the public entity not later than the ninetieth day after accrual of the underlying cause of action.  N.J. Stat. Ann. § 59:8-8(a).  Failure to file the required notice shall result in dismissal of the plaintiff's tort claims.  N.J. Stat. Ann. 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.").  However, six months after the date the notice of claim is received, the claimant may file suit in an appropriate court of law.  N.J. Stat. Ann. § 59:8-8.

Here, Plaintiff does not allege that he has complied with the relevant provisions of the New Jersey Tort Claims Act.  Accordingly, the state law claims will be dismissed without prejudice.  If Plaintiff has complied with these provisions, he may apply to file a second amended complaint establishing his compliance with these provisions.

## V. CONCLUSION

For the reasons set forth above, the Fourth Amendment excessive-force claim may proceed as against Defendant police officers Anthony Goodman, Hilburn, Sandwith, C. Lugo, G. Wojowicz, Michael Burgess, and any "John Doe" officers who participated in or were present during the alleged use of excessive force in connection with Plaintiff's arrest. All other claims will be dismissed.

If Plaintiff can establish compliance with the New Jersey Tort Claims Act, he may apply to file a second amended complaint restoring his state law claims for negligence and intentional infliction of emotional distress.

An appropriate order follows.

_____
Esther Salas
United States District Judge

Dated: 6/6/12