Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT GLOVER, | : | |
| Plaintiff | : | |
| v. | : | Civil Action No. 11-5731 (ES) (CLW) |
| CITY OF JERSEY CITY, et al., | : | OPINION |
| Defendants | : | |

**SALAS, DISTRICT JUDGE**

Before the Court is the second motion for summary judgment by police officers Anthony Goodman, Hilburn, Sandwith, C. Lugo, G. Wojowicz, Michael Burgess ("Police Officer Defendants"). (D.E. No. 68). The Court has considered the parties' written submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b). For the following reasons, the Court GRANTS Police Officer Defendants' motion.

**I.    BACKGROUND**

**A.    Procedural History**

On October 3, 2011, Plaintiff Robert Glover filed this civil rights action asserting violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (D.E. No. 1). As a result of this Court's *sua sponte* screening pursuant to 28 U.S.C. § 1915A, Plaintiff's First and Eighth Amendment claims, his claims under 42 U.S.C. § 1986, and his claim for "failure to discipline" were dismissed with prejudice. (D.E. No. 6). Further, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's claims against defendants City of Jersey City and the Jersey City Police Department, Plaintiff's claims based upon the filing of a false arrest report, and Plaintiff's state law claims were dismissed without

prejudice. (*Id.*). Moreover, although the Court permitted Plaintiff to file a second amended Complaint, Plaintiff did not amend his complaint. As a result, only Plaintiff's Fourth Amendment excessive force claim against the Police Office Defendants, and any "John Doe" police officers who participated or were present during the alleged excessive force conduct, proceeded. (*Id.* at 2).

Thereafter, the Police Officer Defendants filed an Answer (D.E. No. 24) and the parties engaged in discovery. On March 23, 2017, all Defendants filed a joint motion for summary judgment (D.E. No. 64), and Plaintiff submitted a brief in opposition (D.E. No. 66). On March 14, 2018, the Court denied Defendants' motion for summary judgment without prejudice on the grounds that dismissed Defendants City of Jersey City and Jersey City Police Department improperly moved for summary judgment together with the Police Officer Defendants. (D.E. No. 67).

On April 12, 2018, Police Officer Defendants filed a second motion for summary judgment. (D.E. No. 68.). On May 4, 2018, Plaintiff sent a letter to the Court, explaining why he did not timely file an opposition to the second motion for summary judgment. (D.E. No. 69.).[1] Plaintiff did not ask for additional time to file an opposition brief, but instead asked the Court to grant default judgment (*id.* at 9), which is not appropriate here. *See* Fed. R. Civ. P. 55.

---

[1] Local Rule 56.1(a) provides, in relevant part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

**B. Facts[2]**

On November 1, 2009, Defendant Officer Anthony Goodman (hereinafter "Defendant Goodman") was conducting visual drug surveillance in the area of Gardner and Monticello Avenues in Jersey City when he first observed five men, one of which was later identified as Plaintiff. (D.E. No. 68-1, Statement of Undisputed Material Facts In Support Of Jersey City Defendants Motion For Summary Judgment ("Defs.' SMF") ¶ 2; D.E. No. 68-3, Ex. A). Defendant Goodman observed an individual approach Plaintiff and hand him money. (Defs.' SMF ¶¶ 4-5). The same individual then met with Wayne Stafford, who was standing near Plaintiff, and accepted two small bags of marijuana from Stafford and walked away. (*Id.* ¶ 8).

Upon observing the drug transaction, Defendant Goodman notified the "perimeter units" of what had just occurred. (*Id.* ¶ 10.). Shortly thereafter, Officer Lugo (hereinafter "Defendant Lugo") and Officer Wojtowicz, (hereinafter "Defendant Wojtowicz") stopped Stafford and arrested him. (*Id.* ¶ 12). They recovered a clear bag containing suspected marijuana and $714.00 from him. (*Id.*). Meanwhile, Officer Sandwith, (hereinafter "Defendant Sandwith") and Officer Hilburn, (hereinafter "Defendant Hilburn") stopped Jason Smith, recovered suspected drugs from him, and arrested him. (*Id.* ¶ 13).

Defendant Goodman then stopped Plaintiff, who resisted arrest and prompting Defendant Wojtowicz to assist. (*Id.* ¶¶ 14-15; D.E. No. 68-3, Exs. C & H). When Plaintiff continued to resist, Defendant Wojtowicz employed the use of his baton and struck Plaintiff's left leg. (Defs.' SMF).

---

[2] Because Plaintiff did not oppose the second motion for summary judgment, the Court assumes the facts provided by the moving party as true. *See* L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment"); Fed. R. Civ. P. 56(e)(3)("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (3) grant the summary judgment motion if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. . . ."); *Ruth v. Selective Ins. Co. of Am.*, No. 15-2616, 2017 WL 592146, at *3 (D.N.J. Feb. 14, 2017) ("[A] movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts . . . receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion.").

The officers then recovered $1,018.00 from Plaintiff. (*Id.* ¶ 17; D.E. No. 68-3, Ex. D). Plaintiff was arrested and charged with resisting arrest and conspiracy. (Defs.' SMF ¶ 19; D.E. No. 68-3, Ex. D).

On July 30, 2015, during the course of the instant litigation, Plaintiff testified at a deposition that just hours before he was arrested on November 1, 2009, he was robbed by individuals "who were under the impression that I still had major drugs. . . ." (D.E. No. 68-3, Ex. B ("2015 Glover Dep.") at 45:1-4; Defs.' SMF ¶ 20). One of the robbers hit him in the head with a gun. (Defs.' SMF ¶ 21). The robber assumed Plaintiff had more drugs and money at his home, but Plaintiff led him to his girlfriend's house instead. (*Id.* ¶ 22). When Plaintiff told the robber that he did not have any more money, the robber told him to go "back to Jersey City for the rest of the money and the drugs to bring it back here." (*Id.*).

Plaintiff explained that later that day he pulled over on Monticello and Jewett Avenues "to get something to drink and figure out how I was going to get drugs and money." (*Id.* (citing 2015 Glover Dep. 46:5-13)). When Plaintiff returned to the car, he saw that he had locked the keys inside the car. (2015 Glover Dep. 46:14-19). He phoned a man who lived on Gardner Avenue and asked him to bring a clothes hanger so Plaintiff could pry the car door open. (*Id.* 23:19-21). Plaintiff walked over to the man's house and found him sitting on his porch. (*Id.* 23:22-23). Plaintiff shook the man's hand, and the man said he would go in and get the clothes hanger, so Plaintiff waited on the porch. (*Id.* 23:23-25). This is when Plaintiff noticed cars pulling up and officers jumping out and grabbing guys on the corner. (*Id.* 24:2-3).

Plaintiff described his encounter with the Police Officer Defendants, whom he could not identify at the time. An officer grabbed Plaintiff, pushed him to the wall and threw him on the floor. (*Id.* 24:4-12). Plaintiff put his hands out to brace himself as he hit the ground. (*Id.* 24:12-

13). The officer was "trying to man handle me" and Plaintiff was trying not to resist. (*Id.* 24:13-14). Another officer came over and started hitting Plaintiff with a baton. (*Id.* 24:15-18). Plaintiff tried to block his face. (*Id.* 24:18-19). An officer twisted Plaintiff's arm "until he finally got it behind my back and he cuffed me." (*Id.* 24:20-21).

On August 10, 2016, Plaintiff was again deposed and he described the incident as follows:

> Okay. I would for certainty say that Officer Goodman was the first one that pushed me up against the wall
> . . . .
> Woj[t]owicz came after the other officer had tried to put his knee in my back and hit me in the back of the head with a radio. I didn't identify which officer that was. But it was three officers that were grabbing me.
>
> When I went to the ground to try to protect myself, I guess they thought I was trying to resist or whatever. But I was just trying to stop myself from the fall. And that's when everything just went crazy from there.
>
> One guy is pulling my arm, one guy is trying to push me down to make me still. I'm telling them, "I'm not trying to resist," I'm just, don't want to hurt myself more than they already did.

(D.E. No. 68-3, Ex. E ("2016 Glover Dep.") 13:18-25, 14:1-9). Plaintiff alleges injuries to his arms, leg, and back:

> When I slid down to the ground I tried to brace myself. You got my elbows on the ground. You got him on my back. You got the other officers hitting me with the baton and me trying to give him my arm so he can go ahead and cuff me. The injuries that I sustained they weren't life threatening, but I felt them for days on end.
>
> . . . .
>
> Specifically, one had his knee in my back twisting my arm, trying to get it from under my chest, the other one had his foot on my ankle while he was hitting me on my calf area.

(2015 Glover Dep. at 43:11-23.). Plaintiff did not seek any psychiatric, psychological, or medical attention due to the alleged emotional distress and physical injuries, and has not provided any

5

medical evidence or reports of the alleged injuries. (Defs.' SMF ¶¶ 24-26). Plaintiff stated that he did not seek medical attention because he did not have medical insurance, and that he instead took over-the-counter pain medication for about a week. (2015 Glover Dep. 44:4-10 (noting that the swelling lasted for a little over a month)).

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating, Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 255); *see also Pignataro, v. Port Auth. Of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010).

Initially, the moving party bears the burden of demonstrating the absence of genuine issue of material fact. *Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of the 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (citation omitted); *see also Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing'—that, is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.")(quoting *Celotex*, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the . . . pleading[s.]" *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

### B.     Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, 1) the violation of a right secured by the Constitution or laws of the United States and, 2) that the alleged

7

deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### C. Fourth Amendment Excessive Force Claim

Plaintiff's claim is analyzed under the under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine objective reasonableness, courts must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)) (internal quotation marks omitted). While this inquiry is "highly individualized and fact specific," the Supreme Court has provided three factors to guide courts through it:

(1) the severity of the crime at issue,

(2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and

(3) whether the suspect attempts to resist arrest or flee the scene.

*Santini*, 795 F.3d at 417 (quoting *Graham,* 490 U.S. at 396). *See also Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir. 1997) (providing additional factors including "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time").

Furthermore, "objective reasonableness" is evaluated "from the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Santini*, 795 F.3d at 417 (citing *Maryland v. Garrison,* 480 U.S. 79, 85 (1987)). The Third Circuit has summarized this standard, evaluating all of the *Graham* factors and additional *Sharrar* considerations, as employing a

"totality of the circumstances" approach for evaluating objective reasonableness. *Id.* (citing *Curley,* 499 F.3d at 207).

## III. Analysis

Police Officer Defendants assert two arguments in support of summary judgment. (*See* D.E. No. 68-2, Brief in Support of Jersey City Defendants Motion for Summary Judgment, ("Def's Mov. Br.")). First, that the Police Officer Defendants are entitled to qualified immunity because their allegedly unlawful action was objectively reasonable. (*Id.* at 6-19). Second, that Plaintiff has not established evidence of actual injuries sustained as a result of the alleged use of excessive force, and is therefore not entitled to compensatory damages. (*Id.* at 19). The Court finds that the Police Officers Defendants are entitled to qualified immunity and therefore, does not reach the second argument.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd,* 563 U.S. 731 (2011) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Courts have the discretion to perform the two-step qualified immunity test in the order deemed most appropriate in the particular case at issue:

> [T]he first step of the analysis addresses whether the force used by the officer was excessive, and therefore violative of the plaintiff's constitutional rights, or whether it was reasonable in light of the facts and circumstances available to the officer at the time. This is not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity. The second step is the immunity analysis and addresses whether, if there was a wrong, such as the use of excessive

> force, the officer made a reasonable mistake about the legal constraints on his actions and should . . . be protected against suit[.]

*Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015) (quoting *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007)). "[W]hether an officer has used excessive force 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citing *Graham*, 490 U.S. at 396.)) "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam)) (alterations and internal quotation marks omitted). "'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)) (per curiam). The excessive force alleged here occurred on November 1, 2009. (Defs.' SMF ¶ 1).

"'[E]xisting precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White*, 137 S.Ct., at 551) (internal quotation marks omitted). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* at 1153 (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014)).

Here, even assuming that Plaintiff meets the first step of the qualified immunity analysis—that is, that the following constituted excessive force in violation of Plaintiff's constitutional rights: pushing Plaintiff into a wall, throwing him to the ground, hitting him in the leg with a baton while twisting his arm behind his back in order to cuff him, in response to observing Plaintiff participate

10

in what was believed to be a drug transaction—the Police Officer Defendants have shown, as a matter of law, that they made a reasonable mistake about the legal constraints on their actions.

It is clearly established that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" even if the arrest is invalid or the suspect is innocent. *Graham*, 490 U.S. at 396. However, an officer may not use gratuitous force against a person who was already subdued. *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (citing example *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002)).

Here, even if the officers were mistaken in arresting him, as Plaintiff alleges, they reasonably believed they had observed Plaintiff engage in a drug transaction, then attempt to flee as arrests were being made, and appeared to resist arrest when officers stopped him. Indeed, even Plaintiff admitted in his second deposition that "I guess they thought I was trying to resist or whatever." (2016 Glover Dep. 14:3). Further, Plaintiff does not assert that he was handcuffed or was otherwise cooperating and holding still at the time the arresting officers used force. (*See generally* D.E. No. 4; 2015 Glover Dep.; 2016 Glover Dep.). In fact, he testified that once he had had been cuffed, the officers ceased using force and simply asked him some questions. (*See* 2015 Glover Dep. 24:20-22). Thus, there is no dispute that Plaintiff *reasonably appeared* to be resisting and had not been handcuffed or subdued from movement at the time the officers used force, including when Defendant Goodman hit Plaintiff on the leg with a baton. (*See id*; *see also* D.E. No. 68-3, Ex. C ¶ 6 & Ex. H 11:18-21). This gave the officers the right to use some physical force to effect an arrest. *See Graham*, 490 U.S. at 396; *see also Santini v. Fuentes*, 739 F. App'x 718, 721 (3d Cir. 2018) (noting officers' use of force was appropriate to effect an arrest when the facts suggested "some level of resistance to" the officers "at all stages of the physical interaction and continued resistance, even as officers instructed him to stop resisting.").

Further, at the time of the arrest in question there was no case law establishing that officers cannot use some force, including briefly using a baton to strike the legs of an arrestee who appears to be resisting, in an attempt to handcuff the suspect before he is fully cooperating with the arrest. *See e.g.*, *Santini*, 739 F. App'x 718, 721 (3d Cir. 2018) (affirming summary judgment on the basis of qualified immunity in a 2009 arrest of a non-suspect witness who was pepper-sprayed and struck with nightsticks prior to being handcuffed when it appeared he was resisting). Accordingly, there was no existing precedent that "placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1148.

Therefore, the Police Officer Defendants are entitled to qualified immunity and their motion for summary judgment is granted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the Police Officer Defendants' motion for summary judgment on the basis of qualified immunity.

An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
